IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Civil Action No. 1:17-cv-00949-RM-KLM

ROYAL CREST DAIRY, INC.

      Plaintiff,

v.

2:20. MR - 1. 7HM. 38 NPM

CONTINENTAL WESTERN
INSURANCE COMPANY, a corporation

      Defendant.

_____/

### NON-PARTY GEORGE W. KEYS' MOTION TO TERMINATE OR LIMIT THE SCOPE OF DEPOSITION AND FOR PROTECTIVE ORDER AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rules of Civil Procedure 30(d)(3), 26(c) and 45, as well as Local Rule 3.04(a), non-party George Wilton Keys ("Mr. Keys"), files this Motion to Terminate or Limit the Scope of Deposition and for Protective Order and Incorporated Memorandum of Law.

### Introduction

This motion arises out of a non-party deposition taken in this district in the case styled *Royal Crest Dairy, Inc. v. Continental Western Insurance Company*, Case No.,17-CV-00949-RM-KLM, which is currently pending in the United States District Court for the District of Colorado (the "Underlying Litigation"). The Underlying Litigation is just one in a series of Colorado state and federal cases in which property insurers have attempted, with varying degrees of success, to disqualify property insurance appraisers who have historically represented policyholders on a contingency fee basis from participating

in "appraisal," an alternate dispute resolution procedure commonly provided for in property insurance policies.

In this case, however, Continental Western Insurance Company (the "Insurance Company") already tried—and failed—to disqualify Mr. Keys from acting as Royal Crest Dairy, Inc.'s ("Royal Crest") appraiser. Moreover, notwithstanding the district court's refusal to disqualify Mr. Keys, to avoid further conflict and expedite resolution of the appraisal of Royal Crest's insurance claim, Mr. Keys *voluntarily withdrew* as Royal Crest's appraiser prior to having any meaningful involvement in the appraisal.

Notwithstanding, the Insurance Company insisted upon taking Mr. Keys' deposition. Rather than limiting the deposition to Mr. Keys' nominal involvement in the Royal Crest appraisal, however, the Insurance Company proceeded to depose Mr. Keys for over 4 hours, dedicating much of that time to rehashing orders disqualifying him in other, unrelated cases. In light of the Colorado district court's refusal to disqualify Mr. Keys in this case, such testimony is not pursued in good faith, is unreasonably duplicative of testimony Mr. Keys has already given in both deposition and in trial in other cases, and serves no legitimate purpose but to unreasonably annoy, harass, embarrass, and cause undue burden for a non-party. Accordingly, Mr. Keys seeks a protective order terminating the deposition or, alternatively, limiting the scope of any reconvened deposition to Mr. Keys' minimal involvement in the Royal Crest appraisal.

### Background

Mr. Keys is a licensed public insurance adjuster and appraiser with decades of experience. Having started his career working for insurance companies, Mr. Keys

2

ultimately went on to establish Keys Claims Consultants, Inc., a reputable public adjusting company based in Naples, Florida. In addition to providing public adjusting services to both residential and commercial property owners, Mr. Keys routinely serves as an appraiser for policyholders. *See* Deposition of George Keys, attached as **Exhibit A** ("Keys Dep."), at 17-18. Mr. Keys has obtained the designation of Senior Professional Public Adjuster (SPPA) from the National Association of Public Adjusters, is a past member of the board of directors for the National Association of Public Adjusters (NAPIA), and a founding member, multiple-time past president, and current member of the board of directors of the Florida Association of Public Insurance Adjusters (FAPIA). *See id.* at 50; *see also* George W. Keys Jr., https://keysclaims.com/our-team/george-w-keys-jr/.

I.     The Campaign to Push Mr. Keys Out of Colorado

Having built a successful public adjusting business in Florida, Mr. Keys began expanding his business to include public adjusting and appraisal work on behalf of property owners in Colorado. Keys Dep. at 18:10-20:7. Before long, however, insurance companies in Colorado began challenging Mr. Keys' ability to serve as an "impartial" appraiser under the terms of certain insurance policies based upon Mr. Keys' contingency-fee based compensation, long-standing relationships with other professionals—such as lawyers and other public adjusters—who represent policyholders, and successful career as a public adjuster and policyholder advocate. *See, e.g., Copper Oaks Master Home Owners Ass'n v. Am. Family Mut. Ins. Co.*, No. 15-CV-01828-MSK-MJW, 2018 WL 3536324, at *6-7 (D. Colo. July 23, 2018), *appeal dismissed* (Sept. 26, 2018) (identifying cases in which Mr. Keys was disqualified for lack of "impartiality").

Counsel for the Insurance Company in this case—Wheeler Trigg O'Donnell, LLP ("WTO")—has previously represented insurance companies in other cases seeking to either disqualify Mr. Keys or vacate appraisal awards on claims where Mr. Keys served as the appraiser for the insured, including its oft-cited *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, No. 14-CV-03417-LTB, 2016 WL 1321507 (D. Colo. Apr. 5, 2016), *aff'd*, 886 F.3d 852 (10th Cir. 2018). Notably, however, in *Summit Park*, Mr. Keys was disqualified based upon the policy's requirement that an appraiser be "impartial." *Id.* at *5. More recently, WTO represented the insurance company in *Copper Oaks Master Home Owners Ass'n v. American Family Mutual Insurance Co.,* wherein—relying on *Summit Park*—the court vacated an appraisal award after finding Mr. Keys was not an "impartial" appraiser within the meaning of the insurance policy at issue in that case. *Copper Oaks,* No. 15-CV-01828-MSK-MJW, 2018 WL 3536324, at *10 (D. Colo. July 23, 2018), *appeal dismissed* (Sept. 26, 2018). Having testified both in deposition and at trial in the *Copper Oaks* matter, Mr. Keys has been previously been examined by WTO regarding his purported "impartiality"—including the extent of his professional relationship with Merlin Law Group (the same law firm representing Royal Crest in this case)—ad nauseum.

In addition to seeking to disqualify Mr. Keys as an appraiser in the Colorado courts (and, in the process, attempting to claw back millions of dollars in insurance benefits paid to policyholders on indisputably-covered property damage claims), WTO also has dedicated untold hours to attempting to publicly embarrass Mr. Keys—going so far as to have its lawyers prepare a 61-slide PowerPoint presentation for insurance industry professionals featuring a photo of Mr. Keys *personal home* in Naples, suggesting in not so

thinly veiled terms that the home was purchased with fees earned from improperly "inflated" insurance claims. *See* Michael L. O'Donnell & Evan Stephenson, *What The Hail? Exposing Biased Insurance Appraisers,* http://www.pciaa.net/docs/default-source/meetings/20170728_0940_what-the-hail---presentation-on-summit-park.pdf?sfvrsn=2 at 12. The PowerPoint presentation remains publicly accessible online to this day. *Id.*

II.      The Colorado District Court Refuses to Disqualify Mr. Keys in this Case

In 2016, Mr. Keys was hired by Royal Crest to serve as its appraiser in connection with a hailstorm damage claim. Keys Dep. at 62-63. Unlike the other cases in which Mr. Keys has been disqualified on the basis of receiving a contingency fee, or cases where he capped his hourly fee at a percentage of the appraisal award, Mr. Keys' firm was hired by Royal Crest on a straight hourly basis. *Id.* at 63:22-64:1. Moreover, unlike the policy language at issue in other cases, Royal Crest's insurance policy required only that the insured appoint a "competent and *independent*" appraiser—not an "impartial" one. *Royal Crest*, 2017 WL 6819886, at *3 (D. Colo. Dec. 18, 2017), *report and recommendation adopted*, 2018 WL 317465 (D. Colo. Jan. 8, 2018). A copy of the report and recommendation is attached as **Exhibit B**.

Nevertheless, *and prior* to Mr. Keys performing any substantive activity in the appraisal process, the Insurance Company objected to Royal Crest's appointment of Mr. Keys as its appraiser, prompting Royal Crest to file a complaint for declaratory relief seeking a determination that Mr. Keys was, in fact, competent and independent within the

meaning of the policy. Complaint for Declaratory Relief, *Royal Crest.*, No. 1:17-cv-00949-RM-KLM (D. Colo. April. 18, 2017), ECF No. 5.

After removing the underlying lawsuit to the United States District Court for the District of Colorado, the Insurance Company filed a Motion to Disqualify George Keys from Acting as Plaintiff's Appraiser and other Relief ("Motion to Disqualify"). Motion to Disqualify, *Royal Crest,* No. 1:17-cv-00949-RM-KLM (D. Colo. June 27, 2017), ECF No. 30, attached as **Exhibit C.** In support of its Motion to Disqualify, the Insurance Company relied heavily upon exhibits to WTO's briefing in the *Summit Park* case, as well as Judge Babcock's order in *Summit Park* disqualifying Mr. Keys and vacating the appraisal award based upon the insured's counsel's failure to comply with a court order requiring specific, heightened disclosures in that case. *Id.* at 5-8; 11-13. In particular, citing findings from *Summit Park*, the Insurance Company argued that Mr. Keys' advocacy in favor of policyholders, as well as his business relationship with Royal Crest's counsel—Merlin Law Group—demonstrated bias, thus rendering him not "competent" or "independent" within the meaning of the policy. *Id.* at 5.

In response, Royal Crest argued, among other things, that the cases cited by the Insurance Company were inapposite because they relied upon a since-withdrawn version of a bulletin promulgated by Colorado's Department of Regulatory Agencies, Division of Insurance ("DORA") for their construction of the term "impartial," and, in any event, Royal Crest's policy did not require an appraiser to be "impartial." Response to Motion to Disqualify, *Royal Crest,* No. 1:17-cv-00949-RM-KLM (D. Colo. June 27, 2017), ECF No. 40, attached as **Exhibit D** at 12-13.

6

The district court referred the Motion to Disqualify to Magistrate Judge Mix for recommendation, and following full briefing, Magistrate Judge Mix issued a Recommendation of Denial of the Motion. *Royal Crest,* 2017 WL 6819886, at \*4. Critically, in the report and recommendation, Magistrate Judge Mix rejected the Insurance Company's argument that the terms "independent" and "impartial" were "essentially synonymous," noting that "independence" "concerns whether Mr. Keys is subject to the control of Plaintiff, associated with Plaintiff, or dependent on Plaintiff." *Id.* (emphasis added). Conversely, impartiality—which is not required by Royal Crest's insurance policy—concerns the issue of bias. *Id.* In determining Mr. Keys should not be disqualified due to lack of "independence," Magistrate Judge Mix concluded that "nothing here indicates that Mr. Keys is subject to the control of, associated with, or dependent on Plaintiff such that he is not 'independent' for the purposes of the Policy." *Id.*

Further, in rejecting the Insurance Company's argument that Mr. Keys' "bias for insureds coupled with his well-documented relationship with plaintiff's lawyers [Merlin Law Group] makes him unable to act as a 'competent' appraiser," the Court concluded there was "no indication that Mr. Keys had a duty to disclose previous disqualifications or that his failure to disclose those previous disqualifications render[ed] him incompetent in this matter." *Id.* at \*3. Finding Magistrate Judge Mix's analysis "thorough and sound," the district court adopted the recommendation authorizing Mr. Keys to act as Royal Crest's appraiser in its entirety. *Royal Crest,* 2018 WL 317465, at \*1.

Notwithstanding the district court's approval of Mr. Keys as Royal Crest's appraiser and its rejection of the Insurance Company's argument that Mr. Keys' prior

7

disqualifications or his representation of policyholders throughout his career rendered him "not independent," the Insurance Company continued to demand Mr. Keys' withdrawal as Royal Crest's appraiser. Finally, in an effort to mitigate further controversy and avoid additional delay on the appraisal of Royal Crest's insurance claim, in August 2018, Mr. Keys voluntarily withdrew as Royal Crest's appraiser. Keys Dep. 173:9-22; 184:16-18.

Shortly thereafter, Royal Crest amended its complaint to allege, among other things, that the Insurance Company had breached the policy by refusing to proceed with an appraisal of Royal Crest's claim, by failing to apply the terms of the policy in good faith, and by unreasonably delaying payment. *See generally* Royal Crest's Second Amended and Supplemental Complaint, *Royal Crest,* No. 1:17-cv-00949-RM-KLM (D. Colo. Dec. 21, 2018), ECF No. 65, attached as **Exhibit E.** In response, the Insurance Company asserted counterclaims, alleging that Royal Crest breached the policy by, among other things, failing to appoint a "competent, independent appraiser," notwithstanding the Court's directly contrary ruling. *See generally* Defendant's Answer to Second Amended and Supplemental Complaint, Defenses, Counterclaim and Jury Demand, *Royal Crest*, No. 1:17-cv-00949-RM-KLM (D. Colo. Jan. 11, 2019), ECF No. 69, attached as **Exhibit F.**

III.    Despite the District Court's Approval of Mr. Keys as a Competent and Independent Appraiser, and Despite Mr. Keys Having Virtually No Substantive Involvement in Royal Crest's Appraisal Prior to Withdrawing, WTO Takes a Lengthy, Harassing Deposition of Mr. Keys

Notwithstanding the district court's approval of Mr. Keys as Royal Crest's appraiser and notwithstanding Mr. Keys' withdrawal as Royal Crest's appraiser prior to undertaking any substantive work on Royal Crest's claim, WTO subpoenaed Mr. Keys for deposition in this District. A copy of the Subpoena for Deposition is attached as **Exhibit**

G.  Unsurprisingly, given his limited work on the claim before withdrawing, the deposition involved very little questioning regarding the actual Royal Crest appraisal.    WTO nonetheless insisted during Mr. Keys deposition that "it's going to take all day." Keys Dep. at 109:10-11. Indeed, the substantive discussion of Mr. Keys' involvement in the Royal Crest appraisal generously totals slightly over 50 pages worth of the 190-page deposition transcript.  *See* Keys Dep. at 24:9-31:6 (discussing how Mr. Keys' came to be retained by Royal Crest); 40:6-42:25 (discussing whether a marketing brochure, produced in other unrelated cases, was provided to Royal Crest); 62:18-89:10 (discussing Mr. Keys' contract with Royal Crest; Mr. Keys' knowledge of the lawsuit filed by Royal Crest against its Insurance Company; and Mr. Keys disclosures in this case); 128:24-139:19 & 144:8-25 (discussing correspondence regarding Mr. Keys' disclosures); 156:18-160:16 & 173:9-175:19 (discussing Mr. Keys' decision to withdraw as Royal Crest's appraiser).

Instead, the majority of the deposition was dedicated to rehashing facts underlying Mr. Keys' purported "policyholder bias," as articulated in unrelated cases and in a previous seven-hour-long deposition taken by WTO in the *Copper Oaks* matter, notwithstanding that the court already found those issues irrelevant to Mr. Keys' qualification to serve as a "*competent* and *independent*" appraiser in *this* case, under the terms of *this* policy.  Indeed, over objection from counsel for both Mr. Keys and Royal Crest, counsel for the Insurance Company insisted upon going virtually line by line through the *Summit Park* court's findings. *See* Keys Dep. at 89-124.

On two occasions, counsel for Mr. Keys objected to the lengthy *Summit Park* line of questioning on grounds that it was so plainly irrelevant in light of the district court's

refusal to disqualify Mr. Keys in this case, that it could only be intended as a bad-faith

attempt to harass the witness:

> Q. Let's take a look at the facts that Judge Babcock relied upon in vacating that Summit Park award, okay? So if you look at -- we're looking at page 6 of his opinion.
>
> MR. MAMMEL: Object to relevancy.
>
> MR. MARANGES: Counsel, may I ask what this has anything to do with Royal Crest?
>
> MR. RIDLEY: No, you can't. You can object to the form, and that's it.
>
> MR. MAMMEL: I object to relevancy.
>
> MR. RIDLEY: All right. Obviously, I'm hitting the wrong nerve here. This must be really important to draw these types of objections.
>
> MR. MARANGES: I think it's harassing at this point. And, honestly, we've -- I've done my best to stay quiet and not stumble upon any speaking objections. But, at this point, I have to raise an objection as to whether or not any of these questions that, once again, now for the second time, raise issues that were -- that were at issue in a deposition for 7-plus hours in the Copper Oaks matter, that were raised in other proceedings.  Mr. Keys already testified in this deposition that he was aware of these issues at the time of the Royal Crest disclosure. And I question whether or not any of these additional questions about Summit Park for the second time in a second deposition are being raised in good faith. And I'd like to see some connection with the issues that are involved in this case.

Keys Dep. at 93:2-94:6.

After acknowledging that the *Summit Park* order involved the same issues he had

previously deposed Mr. Keys on at length in *Copper Oaks*, *see* Keys Dep. at 95 ([Counsel

for the Insurance Company]: "And in this decision, Judge Babcock talks about the facts

falling into several categories, all right? And I want to see if you agree with the facts. I'm

trying to save time so we don't have to go through the whole *Copper Oaks* deposition

again."), counsel for the Insurance Company nevertheless persisted in questioning Mr.

Keys regarding the details of the *Summit Park* order:

> Q. Okay. All right. The fourth area – we've touched on this a little bit. Judge Babcock writes that -- facts that Auto-Owners believes demonstrates Keys is completely devoted to policyholders. You don't dispute that your career has been completely devoted to policyholders, right?
>
> MR. MARANGES: Object to form.
>
> THE WITNESS: I do dispute that.
> . . . .
>
> THE WITNESS: I certainly have that in my marketing brochure that I have dedicated to policyholders. That's not my entire career as you stated.
>
> BY MR. RIDLEY:
>
> Q. Okay. All right. Okay. Right. You were -- before becoming a public adjuster, you worked for an insurance company?
>
> A. That's correct.
>
> Q. Okay. Down on the bottom of page 7, there's discussion of Risk Worldwide, okay? It says, "Similarly, Auto-Owners states that Keys has launched a natural disaster insurance firm called Risk Worldwide whose stated purpose is to shift the balance of power" -- this a quote – "shift the balance of power from the insurer to the policyholder. First of all, Mr. Keys, what is Risk Worldwide?
>
> MR. MARANGES: I'm going to raise an objection. Counsel, we've gone so far afield of the issues that are involved in this case.

MR. RIDLEY: *We're just getting warmed up. We're just getting warmed up. So — so just chill out.* If we want to call the Court, we can, right? But I don't want to endure the incessant speaking objections. It's improper. And I don't want to have to come back and depose him again.

MR. MARANGES: No less than my client wants to endure repeated and quite fair -- quite frankly unfair attacks on his reputation by you and your law firm now for the second time in deposition. Risk Worldwide -- we can stipulate that the order by Judge Babcock speaks for itself. What George Keys thinks of the order has no bearing whatsoever on any fact in the Royal Crest case.

MR. RIDLEY: If these facts are true, they're relevant. If they weren't disclosed, 'relevant. That's what I'm getting at.

MR. MARANGES: That's for you all to fight about. I'm simply concerned with the repeated deep dives into issues that are so far afield from Royal Crest on a case where he did not substantively serve as appraiser.

MR. RIDLEY: But he was an appraiser --

MR. MARANGES: So let's ask questions about Royal Crest.

MR. RIDLEY: His disclosures are relevant.

MR. MARANGES: He's already testified that he did not disclose the existence of the Summit Park order. I think we can all stipulate and agree to that. I think it's fair to just move on. He's already said he didn't disclose that order. I think it's just blatantly harassing at this point.

Keys Dep. at 113:14 - 116:21 (emphasis added).

Finally, after allowing Mr. Keys to respond to no less than 80 questions regarding *Summit Park* order and other cases finding Mr. Keys not "impartial," counsel for Mr. Keys indicated that he would be moving for protective order and to terminate the deposition on the basis that repeated questioning regarding those cases was intended only to harass:

> MR. MARANGES: Okay. After a break, I'd like to just reaffirm the objection raised prior to this break that we will be moving for a protective order as to any remaining questions in this matter on the basis that counsel is deposing the witness on matters previously deposed once in the Copper Oaks deposition, the second time in the Copper Oaks trial, and that the matters of inquiry have generally just gone beyond any scope of relevance, and that we believe the questions are intended to harass the witness.

Keys Dep. at 186:23-187:8. Thereafter, the deposition was adjourned. *Id.* at 190.

## Memorandum of Law

Federal Rule of Civil Procedure 30 states that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken." Fed. R. Civ. P. 30(d)(3)(A).  In ruling on a motion raised under Rule 30, "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B).  Rule 26(c), in turn, allows this Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters [.]" Fed. R. Civ. P. 26(c)(1)(D). Finally, this Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i)    the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

13

(ii)     the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or

(iii)    the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the proposed discovery in resolving issues.

Fed. R. Civ. P. 26(b)(2)(C).

Here, the relentless questioning regarding the findings in *Summit Park* and other matters disqualifying Mr. Keys based upon entirely different policy language is unnecessarily cumulative, unreasonably annoying and harassing, and unduly burdensome in terms of time and expense for Mr. Keys, especially in light of Mr. Keys' limited substantive involvement in the Royal Crest appraisal—which, however minimal, was undertaken *with court approval* after the Insurance Company's motion to disqualify Mr. Keys was denied.

It is evident that WTO is pleased with the outcome of other matters involving Mr. Keys, and it is not shy about attempting to embarrass Mr. Keys with those decisions both in court and out. It is not, however, proper for WTO to subject a non-party to hours of deposition testimony for the sole purpose of rehashing every unrelated ruling involving Mr. Keys or his company. To the contrary, under Rule 45(d), it is the responsibility of the party or attorney issuing and serving a subpoena to take reasonable steps to *avoid* imposing undue burden and expense on the person subject to the subpoena.

Certainly, threatening a full day-long deposition and taunting this witness with commentary that counsel is "just warming up," does not evidence reasonable steps to avoid

undue burden and expense. To the contrary, it indicates a premeditated intent to use the deposition as a means to unreasonably annoy, harass, and cause Mr. Keys to incur unnecessary expense testifying in a matter in which he had extremely limited involvement.

## Conclusion

For all the foregoing reasons, non-party George Keys respectfully requests the Court enter a protective order terminating, or in the alternative, limiting the scope of his continued deposition to his substantive role in the Royal Crest matter.

## Certificate of Good Faith Conference

Pursuant to Local Rule 3.01(g), we hereby certify that, at the subject deposition taken on February 19, 2020, and again on the telephone on March 2, 2020, undersigned counsel for Mr. Keys conferred with counsel for Defendant in a good faith effort to resolve by agreement the issues raised in this Motion, but the parties' counsel were unable to resolve the issues raised in this motion.

Respectfully submitted,

**KNOTT EBELINI HART**

*Co-Counsel for Non-Party George W. Keys*
1625 Hendry Street, Suite 302
Fort Myers, Florida 33901
Telephone: (239)-334-2722
Facsimile: (239) 334-1446

By:/s/ George H. Knott
   George H. Knott
   Florida Bar No. 375918
   gknott@knott-law.com
   Asher E. Knipe
   Florida Bar No.   63951
   aknipe@knott-law.com

**MARANGES, PLLC**

*Co-Counsel for Non-party George W. Keys*
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
Telephone: (561) 210-9151
Facsimile: (954) 337-5855

By: /s/Christopher J. Maranges
   Christopher J. Maranges
   Florida Bar No. 69875
   chris@marangeslaw.com
   Colleen A. Maranges
   Florida Bar No. 91004
   colleen@marangeslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 02, 2020, a true and correct copy of the foregoing document was filed Middle District Clerk of Court and provided an electronic copy to all counsel of record on the attached Service List.

_/s/ Asher E. Knipe_____
Attorney

### SERVICE LIST

Royal Crest Counsel:
Christopher N. Mammel, Esq.
Tamara Chen-See, Esq.
Merlin Law Group, PA
1001 17th Street, Suite 1150
Denver, CO 80202
cmammel@merlinlawgroup.com
tchensee@merlinlawgroup.com

CWIC Counsel;
Terence M. Ridley, Esq.
Linda J. Knight, Esq.
Wheeler Trigg O'Donnell, LLP
370 Seventeenth Street, Suite 4500
Denver, CO 80202
ridley@wtotrial.com
knight@wtotrial.com